## HOWELL et al. v. GROCERS, Inc.

(Circuit Court of Appeals, Sixth Circuit. December 13, 1924.)

### No. 4060.

**1. Customs and usages ⚖⚙15(1)—Evidence ⚖⚙417(12)—Evidence of custom, or other parol evidence affecting terms of contract for sale of sugar, and submission to jury of issue thereon, held proper.**

Where parties to contract for purchase of sugar did not consider telegrams and entries in broker's journal as constituting whole contract, but understood that some credit was to be allowed, evidence of custom or other parol evidence was admissible to prove terms of credit claimed.

**2. Sales ⚖⚙22(3)—Acceptance of shipment held not to estop purchaser from claiming subsequent shipments were to be made on same terms.**

Where defendant, after proposing to buy five carloads of sugar, failed to accept counter proposal to sell three, but did accept one car shipped pursuant to such proposal, invoiced on open account, such acceptance, though estopping defendant from denying its acceptance of counter proposition, did not estop it from asserting that all shipments were to be made on same terms as one accepted.

**3. Sales ⚖⚙53(2)—Whether contract of sale had been actually made held under evidence for jury.**

Conflicting evidence as to parties' understanding of terms agreed on *held* to raise question for jury whether contract had been actually made.

**4. Brokers ⚖⚙103—Sellers, suing on contract, held precluded from denying broker's authority to make.**

Seller, who pleaded broker's authority to *make contract sued on,* and failed to reply to letter requesting, "If these are not your terms, please advise us promptly," *held* precluded from denying broker's authority as to credit terms.

In Error to the District Court of the United States for the Eastern District of Michigan; Charles C. Simons, Judge.

Action by Frederick A. Howell and others, copartners doing business under name of B. H. Howell, Son & Co., against the Grocers, Incorporated. Judgment for defendant, and plaintiffs bring error. Affirmed.

B. H. Howell, Son & Co., copartners, brought action against the Grocers, Inc., a Michigan corporation, to recover damages for the failure of the defendant to accept and pay for two carloads of sugar. It is averred in the declaration and bill of particulars filed by the plaintiff: That on July 7, 1920, the plaintiff and defendant entered into an agreement, through the firm of F. C. Van Ness & Son, brokers of Detroit, Mich., who were duly authorized to act on behalf of both parties to the contract, whereby the plaintiff agreed to sell and the defendant to buy three carloads of sugar, aggregating 1,800 bags, of 100 pounds each, at 22 cents per pound, f. o. b. New York, plus freight charges, less 2 per cent. That on July 6th the broker wired the defendant: "In reply to our urgent telegrams Howell has wired us we may submit a list of our out of town buyers and quantities desired. They will advise us what they can do. Let us hear from you by telegram at once." To which defendant replied, "Could use five cars," and on the following day confirmed this wire by letter. On the next day, July 7th, the broker, Van Ness, wrote defend-

ant: "B. H. Howell, Son & Co. have to-day allotted you 600 bags of fine granulated sugar for direct shipment on a 22-cent cash less 2 per cent. New York basis. P. S.—Since writing the above Howell has confirmed your order for 1,200 bags additional, making a total quantity of 1,800 bags." That thereupon Van Ness & Son, brokers, entered in their journal the memorandum of three separate sales of three carloads of sugar, 600 bags each, as follows:

"Howell's Order No. 22204. Our Order No. 5905. Grocers, Inc., Battle Creek, Mich. Direct Fine 600. July 7, basis 22.00.

"Howell's Order No. 28582. Our Order No. 5935. Grocers, Inc., Battle Creek, Mich. Direct Fine 600. July 8, basis 22.00.

"Howell's Order No. 28581. Our Order No. 5954. Grocers, Inc., Battle Creek, Mich. Direct Fine 600. July 8, basis 22.00."

It is further averred by the plaintiff that these telegrams and letters and the entries in the broker's journal constitute a written contract, which is supplemented by the manner and custom of dealing, established between the parties to which the said agreement was subject; that, in accordance with such custom, the defendant was entitled to one carload of 600 bags on open account, and that any excess of that amount of sugar purchased by defendant was to be shipped sight draft with B/L attached; that the figures, terms, and phrases used in these telegrams, letters, and entries have a fixed, definite meaning in the trade, and fully describe the kind of sugar which was the subject of this contract, the price and terms of payment which, except for the custom as to credit established by dealings between the parties, would be sight draft with B/L attached.

It is claimed on behalf of defendant: That several months prior to the date of this alleged contract Van Ness, the broker, then representing the plaintiff only, called at defendant's place of business and solicited it to buy sugar from the plaintiff. That defendant thereupon informed the broker it could buy sugar from other dealers on open account 2 per cent., 7 days. That the broker then represented and agreed that Howell would ship the sugar to defendant upon these terms. That after entering into this agreement as to terms of payment and relying thereon, and before the date of this alleged contract, the defendant ordered several separate cars of sugar from plaintiff.

That the first of these cars was shipped sight draft with B/L attached. That defendant immediately notified the broker in reference to the failure of plaintiff to ship in accordance with the terms agreed upon, and the broker wrote defendant, in reply to this notice, that there had been some mistake in the office. The defendant thereupon notified the broker that it would take this car, but that it would not want any more sugar that way, but wanted it in accordance with their agreement. The broker did not reply to this letter, but the next car that was shipped defendant was upon open account—2 per cent., 7 days. That on May 15, 1920, the defendant wrote the plaintiff in part as follows: "Mr. Van Ness, your Michigan representative, advised us that your terms were 7 days after arrival of car, and your shipment has just been reported in the city to-day. If these are not your terms, please advise us promptly." To this letter the plaintiff made no reply. That on June 7, 1920, another car was shipped to defendant with sight draft, B/L attached, but this car was invoiced on credit terms. The defendant again wrote Van Ness, in part as follows: "Will you please advise Howell under what terms you sold this sugar and have them release the car to us. We will pay 7 days after arrival." After this, Van Ness requested a financial statement from defendant, which was furnished, but defendant never received any report in reference thereto.

It is further claimed on behalf of defendant that its offer to buy five cars of sugar was not accepted by the plaintiff; that its allotment of three cars only was not an unqualified acceptance, but a counter proposition never accepted by defendant; that, on the contrary, it wrote or telegraphed the broker on July 16th: "We do not want to enter any orders for shipment in the near future." On August 2, 1920, the first of these three carloads of sugar reached the defendant. It was invoiced upon open account, 2 per cent., 7 days, and was accepted by the defendant. This car was shipped on July 15th. On July 21, 1920, the second car was shipped, sight draft with B/L attached, and on July 30, 1920, the third car was also shipped, sight draft with B/L attached. The defendant thereupon notified the broker, Van Ness, and the plaintiff, that they would not accept the two cars sight draft with B/L attached, but would accept the cars if plaintiff would release the same.

It is further claimed upon the part of the defendant that, under the custom establish-

ed between the parties and in the sugar trade generally, no sugar was shipped without shipping instructions, but that plaintiff, ignoring this custom and the letter of defendant under date of July 16th that it did not want to order any shipment of sugar in the near future, shipped three carloads in the last half of one month; that the Battle Creek market would not absorb this amount of sugar in that time; that, in addition thereto, the defendant had other orders outstanding, part of which was then in transit.

The trial resulted in a verdict for defendant, and judgment was entered upon the records.

Charles E. Lewis, of Detroit, Mich. (Warren, Cady, Hill & Hamblen, of Detroit, Mich., and Armstrong, Keith & Kern, of New York City, on the brief), for plaintiffs in error.

Burritt Hamilton and Henry F. Jacobs, both of Battle Creek, Mich., for defendant in error.

Before DENISON, MACK, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. [1] It is not only impracticable, but unnecessary, to review in detail the seventy assignments of error. It is insisted upon the part of the plaintiff in error that the written telegrams and letters exchanged between the broker and the defendant, and the entries in the broker's journal, constitute a written contract, that it was error on the part of the court to admit evidence tending to prove custom or other parol evidence to vary its terms, and that it was the duty of the court to construe this written contract in accordance with its clear and unequivocal provisions.

This contention wholly overlooks the averments in the declaration that these telegrams and letters did not constitute the entire contract, but that the agreement was subject to the manner and custom of dealing established between the parties, and that, in accordance with this custom, the defendant was entitled, at any one time, to purchase one carload not exceeding 600 bags, of 100 pounds each, of sugar, on open account. It also overlooks at least three of the invoices furnished by the plaintiff to the defendant in which the following appears: "Please note this invoice is rendered on a cash basis. Payment in seven days. * * *" The averments in the declaration and the statements contained in these invoices would warrant the jury in

finding that the plaintiff did not, either at the time these telegrams were exchanged or at the time this action was commenced, construe the terms "cash basis 2 per cent., 7 days," as meaning that the sugar was to be shipped sight draft with bill of lading attached, or that defendant was not entitled to have at least one car shipped upon open account in accordance with the custom established by prior dealings between the parties.

It therefore clearly appears that both plaintiff and defendant understood that all the terms of this contract were not written into the telegrams and entries on the broker's journal, and that, notwithstanding the statement in the broker's letter, "Shipment on a 22-cent cash less 2 per cent. New York basis," some credit was to be extended defendant, but they differ materially as to the extent of that credit. For this reason the court did not err in admitting evidence tending to prove the terms of credit claimed by defendant and properly submitted this disputed question of fact to the jury.

[2, 3] It is also claimed that the court erred in submitting to the jury the question whether there was or was not a contract between these parties for the purchase and sale of these three carloads of sugar. The defendant offered to buy five carloads. The plaintiff allotted it but three. The defendant never expressly agreed to purchase three carloads, instead of five, but it did accept the first car shipped to it on open account. If there was no dispute as to the terms of this contract in reference to the time and manner of payment, then the acceptance of this car might properly be held to estop defendant from denying it had accepted plaintiff's counter proposition to sell it three cars; but the acceptance of one car invoiced on open account by no means estops defendant from asserting that, by the terms of this contract, all of these cars were to be invoiced upon open account, 2 per cent., 7 days. If the plaintiff understood that the defendant was entitled to have only one car shipped upon open account, and it was the understanding of the defendant that all of these cars would be so invoiced, then the minds of the parties never met upon this important part of the contract. For this reason the court properly left that question to the jury.

[4] It is further insisted upon the part of the plaintiff in error that this broker had no authority whatever to extend credit; that in accordance with the usual custom of

firms engaged in like business it employed a credit man for that purpose, and that this credit man had sole authority to determine the credit to which any customer was entitled. However that may be, it is alleged in the declaration that this broker had full authority to make this contract on behalf of the plaintiff and the defendant. The evidence offered by the defendant tending to prove that this broker did agree with the defendant that sugar would be shipped to it upon open account 2 per cent., 7 days, is uncontradicted. If it were conceded that this broker had no authority to make such a contract on the part of the plaintiff, nevertheless the plaintiff was fully advised by the defendant's letter of May 15, 1920, as to the terms of credit extended to the defendant by the broker, and in that letter the plaintiff was requested: "If these are not your terms, please advise us promptly." To this letter the plaintiff made no reply. If the broker was not authorized by plaintiff to make this agreement as to terms of payment, it was the duty of plaintiff to so inform defendant at that time. It cannot now be heard to deny the broker's authority. Under this evidence the jury was warranted in finding, either that the minds of the contracting parties had not met upon the terms of the contract, or, if there was a contract, its terms as to credit were as claimed by defendant. In either event, the plaintiff would not be entitled to recover.

Upon a careful examination of the entire record, it does not appear that any error intervened on the trial of this case to the prejudice of plaintiff in error. The judgment of the District Court is affirmed.